TILLOTSON (UNITED STATES v.). See Case No. 16,524.

---

# Case No. 14,052.

## In re TILLS et al.

[11 N. B. R. 214.] [1]

District Court, W. D. Missouri. 1875.

EXECUTION — DELIVERY TO OFFICER — RETURN — HOW FAR BINDING—BANKRUPTCY—SEIZURE BY MARSHAL—EFFECT UPON PRIOR EXECUTION.

1. The judgment-creditor in an execution is not so far bound by the return of nulla bona on the writ that he may not be permitted to show that there was, during the life of the execution, personal property of the execution defendant within the limits of the city which the constable might have seized.

2. The delivery of an execution to the officer does not give him any property in the goods of the defendant, but only a lien which binds the goods in the hands of the execution defendant, or of any one to whom he may voluntarily convey them; but such lien will hold neither the goods nor their proceeds in the hands of an officer who has seized them under process from a court of competent jurisdiction at the instance of another creditor.

3. The writ first executed will take the goods without regard to their dates or the time of delivery to the officers, and the lien given by such delivery binds the goods against a voluntary transfer.

4. The seizure of the goods of the execution defendant by the United States marshal under a warrant of seizure, upon an adjudication of bankruptcy on a creditor's petition, is such an execution of process as will divest the lien of a prior unlevied execution.

[Distinguished in Re Paine, Case No. 10,673.]

By J. D. S. COOK, Register:

On December 28th, 1872, Nehemiah Holmes, since deceased, recovered judgment against

[1] [Reprinted by permission.]

Tills & May before the recorder of Kansas City, ex-officio justice of the peace within the city, for one hundred and fifty-six dollars and thirty cents. On January 16th, 1873, execution issued on said judgment and was placed in the hands of the city marshal, who had the powers of a constable within the city limits. The execution was never actually levied on any property of Tills & May. On January 21, 1873, fourteen writs of attachment issued by justices of the peace of the township in which Kansas City is situated, were levied by the constable of that township, on all the property of Tills & May, consisting principally of a stock of furniture in that city. On the 24th of January, 1873, a petition for adjudication of bankruptcy was filed by creditors against Tills & May, upon which they were adjudicated bankrupts, and a warrant for the seizure of their property issued to the marshal of the district. On this warrant all their goods, etc., were seized on February 13th, 1873, and sold by the marshal under order of court, and the proceeds are now in the hands of the assignee. April 14th, 1873, the city marshal returned the execution in his hands with the following return indorsed thereon: "Executed the within writ by making diligent search and cannot find anything belonging to the within-named defendant on which to levy. Done in the City of Kansas, Kaw Township, Missouri, this 14th day of April, 1873." August 26th, 1873, Mary R. Holmes, who is the administratrix of Nehemiah Holmes, then deceased, made proof of debt claiming a lien on the proceeds of the personal property seized and sold by the district marshal under the warrant of seizure and order of sale, by virtue of section 5. c. 184, Gen. St. Mo., and the claim was allowed as secured. To set aside this allowance the assignee has applied for a re-hearing of the claim. The section of the statute referred to is as follows: "* * * The execution, from the time of delivery to the constable, shall be a lien on the goods, chattels, and shares in stocks of the defendants, found within the limits within which the constable or other officer can execute the process."

Four objections are urged to the allowance of this claim as a secured debt. First. It is contended that the plaintiff in the execution is bound by the return of nulla bona by the officer, thereon; and cannot be permitted to show that there was, during the life of the execution, any personal property of the execution defendants within the limits of the city. Second. That, if the execution creditor had any lien by virtue of the execution, it was upon the goods themselves; and he should have enforced it against them specifically, and cannot follow the proceeds in the hands of the assignee. Third. That the lien conferred by the statute is valid only against the property in the hands of the execution debtor, and those to whom he has voluntarily assigned the property; but it is not binding as against a subsequent seizure by an officer under legal process, and a sale made by him upon such seizure. Fourth. That, even if the claimant had a lien on these goods or their proceeds during the lifetime of the execution, such lien was lost, by the lapse of time, the execution being returnable in ninety days from the date of issue, and having been returned before the proof of debt was made and the lien claimed.

I do not think the first point is well taken. The return does not say that Tills & May had no property within the City of Kansas. It is "that the officer could not find any property whereon to levy." This does not show that there was not property of the defendants which he failed to find, or that there was not property which he did find, but on which he could not levy because it had been already seized by the marshal under the proceeding in bankruptcy. Nor can I see how the plaintiff would be bound by the return if the officer had expressly stated in it that the defendants had no property within the city. If so, then the plaintiff could not have had an alias execution issued and levied on property which belonged to the defendants before the return was made, but which had not been seized under the first execution. The return would have estopped him from showing that such property was the property of the defendants.

The second and third objections may be considered together. They make it necessary to inquire into the nature and extent of the lien given by the delivery of an execution to a constable under the statute in question. If it is such a lien as the laws of the state would enforce, notwithstanding the seizure of the goods by an officer under legal process, then the same lien will be allowed in the bankruptcy proceeding if properly asserted. What then is the lien which the laws of this state give to the plaintiff in an execution which has been delivered to the officer. This question was much considered in the case of Field v. Milburn, 9 Mo. 492. In that case the execution had been issued and delivered to the constable, and before any levy was made by him, the goods of the defendant in the execution were seized by the sheriff on attachments in his hands. The goods seized were sold by order of the circuit court, and the plaintiff in the execution claimed the proceeds. The court held that the goods were bound by the levy of the attachment; that the latter took precedence of the execution, having been first levied. The case of Payne v. Drewe [4 East. 523]. cited by the court, was one in which a sheriff was sued for having returned nulla bona on an execution delivered to him, and attempted to excuse himself by showing that prior to the delivery of the execution to him a sequestration was issued out of chancery against the goods of the same defendant, but had not been executed. The court held the sheriff liable, although they gave to the sequestration the force of an execution at common law, and as a lien upon

the goods, from the time of awarding the commission. The court, Lord Ellenborough delivering the opinion, held that as between different writs from the same or different courts, the one first actually executed will bind the property without regard to the priority of the lien created by their delivery to the officer. In Smallcomb v. Cross, 1 Ld. Raym. 251, a creditor had an execution issued and delivered to the sheriff, but did not require the same to be levied, and afterwards the plaintiff delivered an execution against the same defendant, and caused a levy to be made and the goods sold, and bought them himself at the sale. The sheriff then levied the first execution on the same goods, and the purchaser at the execution sale (the plaintiff in the second execution) sued the sheriff and the first execution plaintiff in trover. The court held that the property in the goods passed by the sale under the second execution, the one first levied, and that the plaintiff was entitled to the goods and their proceeds, and, "by the whole court—if a fieri facias had been sued the first day of the term, and another fieri facias afterwards, and the last had been first executed, the other had no remedy but against the sheriff." And per Holt, Chief Justice: "If a writ of execution be delivered to the sheriff against A., and A. becomes bankrupt before it be executed, the execution is superseded; and consequently the property in the goods is not absolutely bound by the delivery of the writ to the sheriff." In some of the states the rule is that the lien will hold against the second execution until the latter has been fully executed by a sale. That is, that the officer who levies the second execution first upon the goods cannot hold them against the first execution unless the goods seized have been sold under his writ; that it is the sale and not the levy which determines the priority. This is the rule in Illinois, as laid down in Rogers v. Dickey, 1 Gilm. 636, and in some of the other states, as appears from the cases there cited. That case adopts the rule laid down by Lord Ellenborough in Payne v. Drewe [supra], but holds that the writ has first attached in point of execution when a sale is made under it. The court of Missouri has, however, adopted the Kentucky doctrine, that the levy of a writ, when more than one exists, gives priority to the one levied. 9 Mo. 492, supra.

It follows from these authorities, that the delivery of an execution to the officer does not give the officer any property in the goods of the defendant, but only a lien which binds the goods in the hands of the execution defendant, or of any one to whom he may voluntarily convey them, but such lien will hold neither the goods nor their proceeds in the hands of an officer who has seized them under process from a court of competent jurisdiction at the instance of another creditor. That as between such different writs, the one first executed will take the goods, without regard to the dates of the writs or the time of their delivery to the officers. The lien given by such delivery binds the goods against a voluntary transfer, but not one made under legal process. Is the seizure of the goods by the marshal of the district, under warrant of seizure upon an adjudication of bankruptcy on creditor's petition, such an execution of process as will divest the lien of a prior unlevied execution? It is an authority equally competent with an execution from the state court, to bind the goods of the defendant, when executed by the proper officer, and is thus within the very terms of the rule of Lord Ellenborough as approved by the supreme court of the state. It is a writ issued from a court of competent jurisdiction on an adjudication made adversely to the defendant, on petition of a creditor, and thus would seem to have the same effect in binding the goods of the bankrupt as the levy of an attachment or execution would have. In its effect upon the equitable estate of the bankrupt, it has been compared to an equitable attachment, and the assignee held to take such an estate with a superior equity to that of a judgment-creditor who had an execution returned unsatisfied, but who had not filed a creditor's bill. In re Mebane [Case No. 9,380]. If this is not the case, then we have in the present case the singular anomaly of an execution whose lien had been postponed by the levy of attachments upon the property of the debtor; these attachments dissolved by the adjudication in bankruptcy, and thereupon the lien of the execution creditor revived, and taking precedence of the attachments which had superseded it. That is, the attaching creditors, by their vigilance and activity, gain the preference over the execution creditor—their liens are destroyed by the still superior vigilance of the petitioning creditor, and thereupon the execution creditor, who has exercised no vigilance and made no effort to secure his claim, gains a preference over both. It cannot be that such is the case. It would certainly be a novel application of the maxim "Vigilantibus non dormientibus subveniunt leges." Nor will it answer to say that the assignee takes all the property of the bankrupt, subject to all liens which would affect the bankrupt himself. The assignee represents the bankrupt, it is true, but he also represents the creditors of his estate. He is not bound by any lien or encumbrances which are not valid as against creditors. For example, in this state an unrecorded chattel mortgage would not bind him. As we have seen, the lien which the delivery of the execution gives to the constable is not valid against a creditor who procures the goods of the debtor to be seized on adverse process, and the assignee represents creditors who are in the actual exercise of that right by obtaining the adjudication of bankruptcy, and having the goods seized thereon. His claim is paramount, and the execution creditor cannot enforce his lien.

I have given this point the more attention

because my views seem to be opposed to those of Judge Blodgett in the case of In re Weeks [Case No. 17,350]. That was a case in Illinois, where the rule is, as we have seen, different from that adopted in Missouri. 1 Gilm. 636, supra. Whether his ruling was based on that distinction or not I cannot say; but in the view I am compelled to take of the nature of this lien, as interpreted by the supreme court of this state, I cannot hold otherwise than I have done in regard to its effect.

This view of the case renders it unnecessary to dispose of the fourth objection raised by the assignee to this security; whether, admitting that the execution was a lien, the claimant was not bound to prove and claim it during the lifetime of the execution and while the lien was in existence, and whether the return of the execution did not terminate its effect so that no lien could be afterwards based upon it. The question is not free from difficulty, and I give no opinion upon it.

KREKEL, District Judge. I agree with the register in the conclusions reached, and much of the reasoning by which he arrives at them. Had the execution been levied on the property prior to the marshal seizing, the lien would have held good even against the proceeds in the bankruptcy court, as decided in Wilson v. City Bank of St. Paul [17 Wall. (84 U. S.) 473]. This case affirms the view taken in a very early case decided in this court. The judgment of the register is affirmed, and the claim allowed as unsecured.